**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 15-4780**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

   v.

JEFFREY BRIAN COHEN,

        Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. William D. Quarles Jr., District Judge. (1:14-cr-00310-WDQ-1)

Argued: January 25, 2018                       Decided: April 25, 2018

Amended: April 25, 2018

Before KING, FLOYD, and THACKER, Circuit Judges.

Dismissed in part and affirmed in part by published opinion. Judge King wrote the opinion, in which Judge Floyd and Judge Thacker joined.

**ARGUED:** Brian Joseph Kornbrath, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellant. Harry Mason Gruber, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Joyce K. McDonald, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

KING, Circuit Judge:

Jeffrey Brian Cohen appeals the criminal judgment entered against him in the District of Maryland in December 2015. Cohen, who represented himself pro se during most of the protracted criminal proceedings in the district court, pleaded guilty in June 2015 to the offenses of wire fraud, aggravated identity theft, making false statements to insurance regulators, and obstruction of justice. Those offenses were among thirty-one charges lodged against him by the grand jury, all stemming from a massive insurance scam that caused losses exceeding $100,000,000. Cohen was sentenced to an aggregate term of 444 months in prison. Notwithstanding the appeal waiver in his plea agreement with the United States Attorney, Cohen pursues this appeal. The issues we must resolve include the applicability of Cohen's appeal waiver, plus a right-to-counsel contention relating to his sentencing. As explained below, we dismiss in part and affirm in part.

I.

A.

During the relevant period, Cohen was the president and chairman of an entity named Indemnity Insurance Corporation RRG, and he had previously controlled its predecessor, Indemnity Insurance Corporation of DC, RRG (collectively "IIC"). IIC marketed and sold general liability and other types of insurance to individuals and businesses in the entertainment industry. As such, IIC was obliged to submit quarterly and yearly financial statements to insurance regulators. Such regulators are responsible for protecting policyholders and the public through their oversight of the insurance

2

industry and by making certain that insurers such as IIC are able to perform their coverage obligations.

Beginning in 2008 and continuing through at least 2013, Cohen engaged in a multi-faceted scheme to defraud IIC policyholders and the public by misrepresenting the financial status of IIC. In furtherance thereof, Cohen created a web of false and fraudulent financial documents, including bank statements, letters of credit, reinsurance documents, financial statements, and account balances. In carrying out his fraud scheme, Cohen sent misleading and fraudulent representations to auditing firms and others, seeking and securing favorable opinions on the financial standing of IIC. Cohen then touted IIC's false financial standing and inflated ratings to current and potential policyholders. As a result of the scheme, IIC received more than $100,000,000 in insurance premiums.

On June 24, 2014, after ferreting out Cohen's fraud scheme and related criminal activities, the FBI and the federal prosecutors in Maryland secured an indictment against Cohen from the grand jury in Baltimore. According to the authorities, that indictment and Cohen's arrest upended his intentions to harm public officials. During their investigation, federal agents discovered that Cohen had purchased such items as a long range tactical rifle, plus ammunition and a night vision device. The agents also ascertained that Cohen had researched homemade bombs, purchased ammonium nitrate, and made audio recordings about plans to attack public officials. As a result, Cohen has been in federal custody since his arrest in June 2014.

The third superseding indictment of December 2, 2014 — the operative indictment in this appeal — charged Cohen with thirty-one offenses (the "Indictment"). J.A. 68-92.[1] According to the Indictment, Cohen transmitted by wire a vast number of false and misleading communications in furtherance of his fraud scheme. Cohen also fraudulently used the identities of other persons to lend credibility to false financial documents. To conceal the actual financial condition of IIC, Cohen presented fraudulent financial statements to insurance regulators in both Delaware and the District of Columbia. As his fraud scheme began to unravel, Cohen threatened witnesses in an endeavor to obstruct their communications of his wrongdoing to the authorities. The Indictment exposed Cohen to the forfeiture of more than $100,000,000.

B.

Cohen initially retained his defense counsel, but those lawyers withdrew after the grand jury returned its initial indictment. The district court then appointed the federal public defender to represent Cohen. In early November 2014, Cohen moved to terminate his counsel and to represent himself pro se. The public defender then moved to withdraw from the representation, advising the court that Cohen's request to represent himself was unequivocal.

---

[1] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

The district court referred the representation motions to a magistrate judge. During a so-called *Faretta* hearing,[2] Cohen confirmed to the magistrate judge the following:

- he had studied law and previously represented himself in court;

- he understood the charges in the Indictment, the maximum permissible penalties, and that the Sentencing Guidelines applied;

- he understood that the trial judge could not provide legal advice or assist him on how to proceed; and

- he knew that the proceedings would be complex, conducted according to the rules of evidence and criminal procedure, and that a trained lawyer might better represent him.

*See* J.A. 97-100.  Cohen advised the magistrate judge that he had decided to represent himself voluntarily "after much thought and deliberation."  *Id.* at 100.  At the hearing's conclusion on November 17, 2014, the judge granted the public defender's motion to withdraw and authorized Cohen to represent himself pro se.  Nevertheless, the judge appointed a "standby counsel" to assist Cohen's pro se efforts during the proceedings.[3]

---

[2] A *Faretta* hearing draws its name from a 1975 Supreme Court decision relating to pro se representation in criminal proceedings.  Such a hearing seeks to determine whether the accused, who is seeking to manage his own defense, understands the consequences of waiving his Sixth Amendment right to counsel and is relinquishing that right knowingly and intelligently.  *See Faretta v. California*, 422 U.S. 806, 835 (1975).  Cohen convinced the magistrate judge that the *Faretta* criteria had been satisfied.

[3] In *McKaskle v. Wiggins*, the Supreme Court sought to define the role of a standby counsel.  *See* 465 U.S. 168, 184 (1984).  As explained therein, the standby counsel's duties include relieving the judge of the obligation to "explain and enforce basic rules of courtroom protocol" and assisting the defendant in "overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals."  *Id*.  In appointing a standby counsel for Cohen, the magistrate judge
(Continued)

5

## C.

### 1.

In late November 2014, after the district court authorized his pro se self-representation, Cohen challenged the pretrial seizures of his assets by the federal authorities and sought relief therefrom. Cohen asserted, inter alia, that the grand jury had been rigged and contended that there was no nexus between the alleged offenses and the seized assets. The government, on the other hand, emphasized that the seizures had been made pursuant to duly issued warrants and were predicated on judicial findings of probable cause. On January 22, 2015, the magistrate judge conducted proceedings on several pending issues, including the seized property questions. The judge then recommended the denial of that challenge, concluding that the pretrial seizures had been properly made. Although Cohen sought reconsideration, the court adopted the magistrate judge's recommendation.

### 2.

Cohen made other efforts to gain access to the seized assets. In February 2015, he moved for another hearing on the propriety of those seizures, relying on our decision in

---

explained that the standby lawyer would not actually defend Cohen in the criminal proceedings and that the judge would not offer him legal advice. The judge emphasized that, because Cohen was being detained pending trial, the standby counsel would be available to answer questions, assist with discovery, and perform other tasks that are difficult for an accused in custody.

*United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001).[4] Cohen requested the district court to rule that the government had restrained his untainted assets without probable cause, thereby undermining his use of those assets to hire standby counsel of his choice. Cohen argued that he was entitled to a *Farmer* hearing because he wanted to terminate his appointed standby counsel, and he could not afford to hire a standby counsel of his choice without the seized assets.

The government opposed Cohen's *Farmer* hearing request, explaining that the asset seizures were supported by probable cause and that Cohen had failed to show that the seized assets would not be subject to forfeiture should he be convicted. The prosecutors emphasized that Cohen had already waived his right to counsel. Acknowledging that Cohen could change his mind and again request an appointed lawyer, the prosecutors asked the district court to assess whether Cohen intended to abandon his pro se status and reassert his right to counsel. The government thus suggested that an additional *Faretta* inquiry would best ensure that Cohen understood his right to counsel and his waiver of that right.

Cohen opposed another *Faretta* hearing being conducted by the district court, arguing that the prosecutor's suggestion was simply an effort to "obstruct [his] right to

---

[4] In our *Farmer* decision in 2001, we recognized that, although an accused does not have a Sixth Amendment right to use illegally procured funds to secure legal representation, due process requires a pretrial hearing on the propriety of an asset seizure if the accused can show that a portion of the restrained assets are untainted. To trigger a *Farmer* hearing, the defendant must show that he needs the restrained assets to retain a lawyer of his choice, and that the government seized his untainted assets without probable cause. *See United States v. Farmer*, 274 F.3d 800, 803-805 (4th Cir. 2001).

7

self representation." J.A. 2280. Cohen maintained that the prosecutors had "no right to question [his] ability to properly defend himself" and that "any further action . . . on [the *Faretta*] issue would be a waste of court resources." *Id.* Cohen explained that he would continue to represent himself and that he was fully aware of his rights and the risks of self-representation. *Id.* Cohen emphasized that, by his *Farmer* hearing request, he sought "funds to pay for a new standby counsel" of his choice. *Id.* Cohen also asserted that he needed the *Farmer* hearing because his appointed standby counsel was "incompetent" and "unprofessional." *Id.*

On April 17, 2015, the magistrate judge authorized Cohen's standby counsel to withdraw, but denied his *Farmer* hearing motion. The judge explained that Cohen had failed to make a prima facie showing that the seized assets were untainted. When again asked if he wanted to continue to represent himself, Cohen reconfirmed that position. Cohen then appealed those rulings to the district court which, in early May 2015, sustained the magistrate judge and denied the *Farmer* hearing request. In so ruling, the court explicitly recognized that Cohen was seeking only to hire his standby counsel, and emphasized that Cohen was not seeking to retain an attorney to actually defend him. In the court's view, the *Farmer* decision was unavailing for Cohen because, as the Supreme Court has recognized, there is no constitutional right to a standby counsel of a defendant's choosing. *See United States v. Cohen*, No. 1:14-cr-0310 (D. Md. May 7, 2015), ECF No. 324 at 90 (relying on *Mckaskle v. Wiggins*, 465 U.S. 168, 183 (1984)).

8

On April 20, 2015, the court nevertheless appointed a new standby counsel to assist Cohen in the district court proceedings.[5]

D.

1.

On June 1, 2015, Cohen went to trial before a jury in Baltimore. Four days later, Cohen entered into a plea agreement with the United States Attorney, agreeing to plead guilty to Counts One, Twenty, Twenty-Four, and Twenty-Eight of the Indictment (the "Plea Agreement"). J.A. 322-36. Those offenses included wire fraud, in violation of 18 U.S.C. § 1343 (Count One); aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count Twenty); making false statements to an insurance regulator, in violation of 18 U.S.C. § 1033(a) (Count Twenty-Four); and obstruction of justice, in violation of 18 U.S.C. § 1512(b) (Count Twenty-Eight). The Plea Agreement contains a fulsome statement of admitted facts that readily establish Cohen's guilt on each of the four offenses.[6]

---

[5] During the district court proceedings, the court appointed three separate lawyers to serve as Cohen's standby counsel. The first two appointees were authorized by the court to withdraw from their standby service of Cohen. Cohen's third standby counsel later served briefly as his first appointed counsel in this appeal.

[6] By paragraph 6 of the Plea Agreement of June 5, 2015, the United States Attorney and Cohen recite, "This Office and the defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A, which this Office would prove beyond a reasonable doubt." The referenced Attachment A, entitled "Cohen Factual Stipulation," constitutes five pages of the fifteen-page Plea Agreement. *See* J.A. 332-36. Cohen therein admitted to a litany of incriminating facts underpinning each of the offenses to which he pleaded guilty. For example, Cohen acknowledged that he had knowingly devised and implemented a massive fraud scheme to obtain insurance (Continued)

The Plea Agreement contains two sentencing stipulations. That is, Cohen was subject to a base offense level of 7 on Count One and a mandatory consecutive sentence of two years on Count Twenty. There are no stipulations as to sentencing on Counts Twenty-Four and Twenty-Eight. The right of the parties to seek Guidelines adjustments was reserved, including possible adjustments for loss amount, number of victims, sophisticated means, leadership role, and obstruction of justice.

The Plea Agreement includes two waiver provisions. First, Cohen waived his trial related rights by pleading guilty. The Plea Agreement also explains Cohen's waiver of appeal by specifying that if he

> were found guilty after a trial, [Cohen] would have the right to appeal the verdict and the [c]ourt's pretrial and trial decisions on the admissibility of evidence. . . . *By pleading guilty, [Cohen] knowingly gives up the right to appeal the verdict and the [c]ourt's decisions.*

J.A. 325-26 (emphasis added). The Plea Agreement provides that, "[b]y pleading guilty, [Cohen] will be giving up all of these rights, except the right set forth in the 'Waiver of

---

premiums by false and fraudulent pretenses. In Cohen's words, he engaged in a "mini Ponzi thing" with another insurance company in order to obtain operating cash. In carrying out his fraud scheme, Cohen identified fake policyholders and created fake financing applications for those phony policyholders. He also fabricated a fake business manager, to manage those fake insurance financing applicants, by falsely using the identity of a former IIC attorney and stamping that attorney's name on spurious documents used to further the scheme. Cohen then submitted phony confirmations — misusing the identity of a bank employee — to defeat legitimate efforts made by insurance regulators to verify IIC's assets. When the Insurance Commissioner of Delaware instituted civil proceedings against IIC, Cohen threatened that State's investigators in an endeavor to corruptly derail a criminal probe of his fraudulent activities.

Appeal' paragraph below, to appeal an illegal sentence." *Id.* at 326. That waiver of appeal paragraph provides in relevant part as follows:

> In exchange for the concessions made by [the United States Attorney], the defendant waives his rights to appeal as follows: the defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291, or otherwise, *to appeal the defendant's conviction and whatever sentence is imposed*.

*Id.* at 329 (emphasis added).

During the Rule 11 plea hearing, the district court ascertained that Cohen fully understood the charges, the potential penalties, and the rights he was waiving by pleading guilty. J.A 285-93. Cohen confirmed that he was giving up the right to "challenge any defect in the indictment, any evidence that was seized, any statements that [he] made, or anything of that nature." *Id*. at 293. Cohen also agreed that he was entering his guilty pleas voluntarily and had not been coerced to do so. *Id.* at 294-95. Cohen's then standby lawyer advised the court that Cohen understood the Plea Agreement, that Cohen had personally negotiated the Agreement and the supporting statement of facts, and that Cohen was "well aware of all the facts in both." *Id.* at 311-12. Importantly, the court explicitly addressed the appeal waiver, advising Cohen, "there is a waiver of appeal provision. You waive the right to appeal from your convictions . . . and *whatever sentence is imposed*, and *you agree* to withdraw all pending motions *and not to file any further motions*." *Id.* at 304 (emphasis added). Cohen confirmed that he understood the court's explanation and the terms of the Plea Agreement and that he "want[ed] to do this." *Id.* at 312, 304-05. The court then accepted each of Cohen's guilty pleas.

11

2.

Two months later, on August 3, 2015, Cohen had a change of heart and moved to withdraw his guilty pleas. Cohen contended, inter alia, that he was legally innocent of the aggravated identify theft offense in Count Twenty and that the prosecutors had improperly induced him to enter into the Plea Agreement. More specifically, Cohen claimed that the stipulated facts in his Plea Agreement were not specific enough to support his conviction for aggravated identity theft. Cohen also asserted that he was wrongly induced to plead guilty by material misrepresentations made by the prosecutors at the plea hearing concerning the seizure of a bank account in his wife's name.

On September 8, 2015, the district court conducted an evidentiary hearing on the motion to withdraw. Cohen himself, his final standby attorney, and two of the prosecutors testified. J.A. 337-440. After assessing the evidence and the applicable legal principles, the court denied Cohen's motion to withdraw his guilty pleas. The court explained that Cohen had not credibly demonstrated his innocence to aggravated identity theft and that he had failed to prove that the prosecution had engaged in "egregiously impermissible conduct that induce[d] the guilty plea[s]." *Id.* at 427, 440. The court emphasized that the alleged misrepresentations about the bank account during plea negotiations was simply a misunderstanding and was not egregious. As the court explained, Cohen had not shown that a reasonable defendant in his circumstances would have gone to trial had he known of the bank account misunderstanding.

E.

1.

Cohen's presentence report (the "PSR") was thereafter drafted, and it was submitted to the district court in July 2015. J.A. 1952-84. In September and November 2015, the court conducted six days of evidentiary sentencing hearings, allowing the parties to fully litigate the sentencing issues. The government called seven witnesses, Cohen testified at some length, and a litany of exhibits were presented. After conducting those sentencing proceedings, the court advised the parties that it would soon make advisory Guidelines calculations and revise the PSR accordingly.

On November 10, 2015, the district court issued its advisory Guidelines calculations. Pursuant to the Plea Agreement, the court applied a base offense level of 7 to Count One and a mandatory two-year consecutive sentence on Count Twenty. The court found the loss amount attributable to Cohen's insurance fraud scheme to be at least $126,000,000, and as much as $137,000,000. J.A. 1986-88. Those findings on loss amount resulted in a twenty-four-level upward adjustment. The court then imposed seven additional upward adjustments: for causing substantial financial hardship to five or more victims; for violating court orders; for using sophisticated means; for jeopardizing the safety and soundness of a financial institution; for maintaining a leadership role; for abusing a position of private trust; and for obstructing justice. *Id.* at 1986-96.

After the PSR was revised to comport with the district court's Guidelines calculations, the parties made additional submissions. Applying a total offense level of 51 and a criminal history category of I, Cohen's advisory Guidelines range was life in

13

prison. The PSR capped the advisory sentencing range at 660 months, however, to comport with the statutory maximum penalties. J.A. 1974. On November 10, 2015, the court filed its Guidelines calculations and adopted the PSR. The court then scheduled the final sentencing hearing for December 10, 2015.

2.

On November 23, 2015 — with his sentencing about to be finalized — Cohen moved to rescind his pro se self-representation status. He also moved the district court to appoint a defense lawyer to represent him at the final sentencing hearing (the "motion to rescind pro se status and appoint counsel"). The court promptly referred Cohen's motion to rescind pro se status and appoint counsel to the magistrate judge.

On December 1, 2015, during a hearing on Cohen's new motion, the magistrate judge commented in some detail on Cohen's pro se representation efforts throughout the district court proceedings. He observed that Cohen had submitted some of the best arguments the judge had seen "that deal with sentencing guidelines." J.A. 1838. The judge identified multiple aspects of the proceedings where Cohen had performed capably in representing himself, including numerous motions, several days of trial, plea negotiations and plea proceedings, efforts to withdraw his guilty pleas, and contested sentencing hearings.

Cohen testified at the hearing that, although he had a great deal of experience with trials and motions, he was nevertheless "very uncomfortable" in the sentencing proceedings. J.A. 1839. When the magistrate judge asked Cohen why he had not raised that discomfort earlier, Cohen responded that the sentencing hearings had not unfolded as

14

expected. Cohen also said he was "in unknown territory" and uncomfortable going forward "without counsel to say, okay, this is proceeding properly." *Id.* at 1840. The magistrate judge found that, because Cohen had not succeeded on his Guidelines arguments, he was seeking an appointed lawyer to "start over again." *Id.* at 1839.

The magistrate judge related during the hearing that Cohen's standby counsel could continue to answer questions for him regarding practices and procedures, emphasizing that a restart of the sentencing proceedings was impractical "and probably would never happen." J.A. 1841-42. Relying on our 1989 decision in *United States v. West*, the judge also correctly recognized that, once waived, an accused's Sixth Amendment right to counsel is no longer absolute. *Id.* at 1846-48 (citing 877 F.2d 281 (4th Cir. 1989)). The magistrate judge emphasized that, more than a year before these events, Cohen had made a knowing and intelligent decision to represent himself pro se. The judge also explained that Cohen had represented himself "for a significant period of time, in the crucible of trials and sentencing hearings" and had done so "zealously and with a great deal of advocacy." *Id.* In that context, Cohen's motion to rescind pro se status and appoint counsel was being made at the eleventh hour and only after he learned that the advisory Guidelines calculations were "off the charts." *Id.*

The magistrate judge therefore denied Cohen's motion to rescind pro se status and appoint counsel. That ruling was predicated on three specific findings: (1) Cohen's motion was untimely; (2) Cohen had not shown any good reason for an appointment of counsel; and (3) such an appointment would not serve "the speedy and timely administration of justice and the court's schedule." J.A. 1848-51. Emphasizing his third

15

finding, the judge again observed that the final sentencing hearing was not likely to be postponed. He explained that it would be "impossible for any new attorney . . . to get up to speed" to maintain the scheduled hearing. *Id.* at 1850. Later that very day, the magistrate judge entered an order confirming his bench ruling. Of importance, Cohen did not seek to appeal the magistrate judge's ruling to the district court, nor did he file any objections to it.[7]

3.

On December 10, 2015, the district court convened Cohen's final sentencing hearing. After considering the positions of the parties and the entire record, the court concluded that "this case requires the imposition of a severe punishment." J.A. 1939. Nevertheless, the court varied downward from "what would be essentially a life sentence for Mr. Cohen" and imposed a sentence that was "sufficient but not greater than necessary to reflect the seriousness of these offenses, provide just punishment and adequate deterrence, and to protect the public from further crimes of the Defendant." *Id.* at 1939-40. With those concerns guiding the court, Cohen was sentenced to an aggregate term of 444 months in prison. His sentences on the four offenses of conviction were as follows:

---

[7] Pursuant to 28 U.S.C. § 636(b), the local rules of the District of Maryland provide that a district judge may "designate a full-time magistrate to hear and determine (including the passage of final orders as to all or any part of) any pretrial matter pending before the Court . . . ." *See* D. Md. L.R. 301.5(a). Those rules provide that an appeal from a magistrate judge's ruling "shall be made to the District Court within fourteen (14) days from entry of the decision." *Id.* 302.1.

16

- 240 months on the mail fraud offense in Count One;

- 180 months for making false statements to an insurance regulator, as charged in Count Twenty-Four, to run consecutive to the 240 months imposed on Count One;

- 240 months on the obstruction of justice offense in Count Twenty-Eight, to run concurrently with the 420 months imposed on Counts One and Twenty-Four; and

- 24 months on the aggravated identity theft offense in Count Twenty, to run consecutive to the 420 months imposed on Counts One, Twenty-Four, and Twenty-Eight.

*See* J.A. 1940, 1946. Cohen's aggregate sentence of 444 months — totalling 37 years — was substantially less than the Guidelines maximum of 660 months. Finally, the court determined that the sentence imposed would best serve the ends of justice.

## II.

As a general proposition, we review a district court's legal conclusions de novo and its factual findings for clear error. *See United States v. Layton*, 564 F.3d 330, 334 (4th Cir. 2009). We also review de novo an issue concerning the validity of an appeal waiver. *See United States v. Cohen*, 459 F.3d 490, 494 (4th Cir. 2006). Any contention of appellate error that was not pursued and preserved in the district court, however, is reviewed for plain error only. *See United States v. Olano*, 507 U.S. 725, 731-32 (1993).

## III.

Cohen has timely appealed from his criminal judgment, seeking to challenge his convictions and sentences. We possess jurisdiction pursuant to 28 U.S.C. § 1291. Cohen

17

has been represented by appointed appellate counsel during the entirety of this appeal.[8]

Cohen has also sought to personally participate in the appeal by way of seventeen pro se submissions. After first assessing the issues presented by Cohen's appellate counsel, we will dispose of his pending pro se submissions.

A.

Through his counsel, Cohen pursues four contentions of appellate error identified in his opening appellate brief:

- First, Cohen maintains that the district court erred in failing to conduct a *Farmer* hearing on his asset seizure allegations (the "*Farmer* hearing issue);

- Second, Cohen contends that his Sixth Amendment right to counsel was contravened by the magistrate judge's denial of his request to revoke his pro se status and have a lawyer appointed for his final sentencing hearing (the "Sixth Amendment issue");

- Third, Cohen argues that the appeal waiver in his Plea Agreement is flawed and unenforceable (the "appeal waiver issue"); and

- Finally, Cohen maintains that the district court erred in making factual findings with respect to his sentencing and in applying multiple Guidelines enhancements (the "sentencing issue").

After Cohen's opening appellate brief was filed, the government moved to dismiss Cohen's appeal in substantial part, interposing the appeal waiver contained in his Plea

---

[8] Although we initially appointed Cohen's final standby lawyer in the district court to serve as his counsel in this appeal, that lawyer soon sought and secured court approval for his withdrawal from the appeal. Two other appellate lawyers were thereafter appointed and subsequently relieved from their representations of Cohen. On June 16, 2016, six months after his appeal was noted, we appointed the public defender for northern West Virginia to represent Cohen. The defender continues to serve as Cohen's counsel in this appeal.

Agreement. More specifically, the government sought the dismissal of three of the four contentions identified in Cohen's opening brief. As an exception, the government did not — and does not — seek to apply the appeal waiver to the Sixth Amendment issue.

On March 15, 2017, we granted in part the government's motion to dismiss Cohen's appeal. *See United States v. Cohen*, No. 15-4780 (4th Cir. Mar. 15, 2017), ECF No. 72 (the "Appeal Waiver Ruling"). That Ruling provided as follows:

> We have thoroughly reviewed the parties' submissions and the record on appeal. Considering the totality of the circumstances — including the language of the plea agreement, the transcript of the plea colloquy, and Cohen's representations during the proceedings below — we conclude that Cohen knowingly and intelligently waived his rights to appeal both his convictions and sentence. Further, we conclude that Issue IV [the sentencing issue] in Cohen's opening appellate brief falls squarely within the waiver's broad compass. However, we defer ruling on the remainder of the motion pending completion of the merits briefing.

*Id.* In sum, the Appeal Waiver Ruling explicitly dismissed from this appeal the multi-faceted sentencing issue. *Id.* It also resolved the appeal waiver issue argued in Cohen's opening brief, concluding that the appeal waiver is valid and enforceable. *Id.* The question of the appeal waiver's applicability to the *Farmer* hearing issue, however, has been reserved and is not yet resolved.

Thereafter, in April 2017, the government submitted its merits brief in this appeal. The government argued that the Sixth Amendment issue is without merit and sought to extend the appeal waiver to completely bar the *Farmer* hearing issue. In Cohen's reply brief, he also focused on the merits of the Sixth Amendment issue and the *Farmer* hearing issue. We thus turn to and resolve those appellate contentions.

19

B.

As an overview of where the unresolved issues stand, we recognize that Cohen's Sixth Amendment issue is not barred by the appeal waiver. And the government agrees with that proposition and does not seek to apply the appeal waiver to that issue. As for Cohen's *Farmer* issue, the prosecutors maintain that the appeal waiver and Cohen's guilty pleas each serve as a bar to our review.

The prosecutors also argue that the district court did not err on the merits in its denial of Cohen's request for a *Farmer* hearing. In that respect, they argue that Cohen had only sought to obtain funds to retain a standby counsel of his choice, and that he failed to make a sufficient prima facie showing to justify a *Farmer* hearing. Cohen, on the other hand, maintains that the appeal waiver does not apply to the *Farmer* hearing issue. He also argues that his guilty pleas do not bar an appellate review of that issue.

C.

1.

In order to fully resolve Cohen's *Farmer* hearing issue, we must decide whether the valid and enforceable appeal waiver has sufficient breadth to bar Cohen's challenge to the district court's denial of his *Farmer* hearing request. Cohen maintains that the *Farmer* hearing issue is exempt from the appeal waiver because he was actually seeking to use his seized assets to retain a defense attorney, rather than to hire a standby counsel. With that spin on the facts, Cohen paints a Sixth Amendment violation by asserting that he clearly expressed his desire to hire his own private defense counsel. This factual

20

assertion is patently false. As the district court specifically found, Cohen sought his "seized funds to pay for *standby counsel of his choice*." J.A. 2370 (emphasis added).

It is settled that Cohen had no right to the appointment of a standby counsel after he chose to proceed pro se, let alone the right to a standby counsel of his choosing. *See United States v. Beckton*, 740 F.3d 303, 307 (4th Cir. 2014) (recognizing that defendant has both a constitutional right to counsel and a constitutional right to represent himself, but that those rights are "mutually exclusive"); *see also United States v. Singleton*, 107 F.3d 1091, 1100-01 (4th Cir. 1997); *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (recognizing that although court may appoint standby counsel, *Faretta* does not require or authorize "hybrid" representation). Thus, the applicable precedent and the controlling facts undermine Cohen's characterization of his *Farmer* hearing contention as constituting a deprivation of his right to counsel. Cohen's effort to repudiate his appeal waiver in that regard is therefore rejected.

Again, as we explained in the Appeal Waiver Ruling, Cohen's appeal waiver is valid and enforceable. We discern nothing that would place the *Farmer* hearing issue beyond the breadth of the appeal waiver, and that issue is therefore dismissed.

2.

Turning to the Sixth Amendment issue, Cohen argues that the magistrate judge contravened his right to counsel by denying his motion to rescind pro se status and appoint counsel for his final sentencing hearing. Although the government agrees that the appeal waiver does not apply to that contention, Cohen nevertheless failed to preserve it for appellate review. That is, Cohen failed to either appeal or object to the magistrate

21

judge's denial of his motion. Although we review for abuse of discretion a court's denial of a defendant's request for counsel after he has already invoked his right to self-representation, the Sixth Amendment issue — not being preserved in the lower court — is subject to plain error review only.

Before making the plain error analysis, some basic legal principles should be identified. First, the Sixth Amendment protects a defendant's "right to counsel at all critical stages of the criminal process." *See Marshall v. Rodgers*, 569 U.S. 58, 62 (2013). That safeguard also protects an accused's fundamental right to voluntarily and intelligently elect to proceed without counsel. *See Faretta v. California*, 422 U.S. 806, 807 (1975). Second, although an accused can reassert his right to counsel after it has been withdrawn, "there is broad consensus that, once waived, the right to counsel is no longer unqualified." *See West*, 877 F.2d at 286; *United States v. Kerr*, 752 F.3d 206, 220 (2d Cir. 2014).

Third, when a trial court is faced with a tardy request for appointed counsel, the court is entitled to consider the defendant's motive in seeking to rescind his pro se status. Put simply, the right to self-representation "does not exist . . . to be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process." *United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir. 2000) (citations omitted); *see also Faretta*, 422 U.S. at 834 n. 46 (observing that right of self-representation is neither "a license to abuse the dignity of the courtroom" nor "a license not to comply with relevant rules of procedural and substantive law"). Fourth, the federal courts routinely consider the timeliness of a renewed request for counsel. *See West*, 877

22

F.2d at 286; *Kerr*, 752 F.3d at 209-10; *United States v. Woodard*, 291 F.3d 95, 111 (1st Cir. 2002).  As we have recognized, a request by an accused to revoke his pro se status and reassert the right to counsel raises "the countervailing public interest in proceeding on schedule," which "has no less weight merely because the motion is filed by a pro se defendant."  *West*, 877 F.2d at 286 (citation omitted).

Turning to the present situation, Cohen made his motion to rescind pro se status and appoint counsel in a very tardy fashion.  The district court had already conducted expansive evidentiary sentencing hearings and issued its advisory Guidelines computations, and Cohen had been representing himself pro se for more than a year.  Throughout the proceedings, and until the eve of final sentencing, Cohen had reaffirmed that pro se self-representation was his desire and intention.  Thus, Cohen had "no right to whipsaw the district court and delay the proceedings by continually alternating his position on counsel."  *See Kerr*, 752 F.3d at 222.

The magistrate judge denied Cohen's motion to rescind pro se status and appoint counsel for three sound reasons:  (1) Cohen's motion was untimely; (2) Cohen had not shown any good reason for an appointment of counsel; and (3) such an appointment would not serve "the speedy and timely administration of justice and the court's schedule."  J.A. 1848-51.  The judge identified the gravamen of the motion as Cohen's dissatisfaction with the Guidelines calculations.  The judge found that Cohen simply wished to "start over again" after his sentencing exposure was greater than he anticipated.  *Id.* at 1839.

This record convincingly reveals that — in every aspect of the district court proceedings — Cohen has received an excess of judicial solicitude, patience, and process. And we are obliged to defer to the magistrate judge's well-founded factual findings. We thus discern no error in the denial of Cohen's motion to rescind pro se status and appoint counsel for his final sentencing hearing. Because no error was made, there can be no plain error. Cohen's Sixth Amendment issue is therefore rejected.

IV.

A.

Finally, Cohen has made seventeen pro se supplemental submissions in this appeal, and many of them seek to pursue additional appellate issues. As an initial matter, we observe that an appellant who is represented by counsel has no right to file pro se briefs or raise additional substantive issues in an appeal. *See United States v. Hare*, 820 F.3d 93, 106 n.11 (4th Cir. 2016); *United States v. Washington*, 743 F.3d 938, 941 n.1 (4th Cir. 2014). For that reason, we promptly denied Cohen's initial effort to file a pro se brief, which was tendered before his counsel had filed the opening appellate brief. Not long after Cohen's counsel filed his opening brief, Cohen sought to file another pro se brief. *See United States v. Cohen*, No. 15-4780 (4th Cir. Oct. 31, 2016), ECF Nos. 56, 57. In the circumstances, we authorized the filing of that submission. Not content with that submission alone, Cohen now seeks to file other pro se supplemental submissions and pursue contentions of error that are generally frivolous and inscrutable.

24

In one of his pending pro se submissions, however, Cohen has identified an *Apprendi* issue with respect to Count Twenty-Four that has plausible merit, but is burdened by serious procedural flaws. *See United States v. Cohen*, No. 15-4780 (4th Cir. Feb. 14, 2017), ECF No. 71.[9]  We will therefore file and address that issue.  With the exception of the *Apprendi* issue, we hereby reject and strike all of Cohen's other pending pro se submissions.

With that explanation, and with most of Cohen's pro se submissions having been rejected and stricken, one of Cohen's supplemental pro se submissions, plus the *Apprendi* issue, are yet unresolved.  *See United States v. Cohen*, No. 15-4780 (4th Cir. Oct. 31, 2016), ECF No. 57 (the "Pro Se Brief"); *Id.* (4th Cir. Feb. 14, 2017), ECF No. 71 (the "*Apprendi* issue").  We will first dispose of the Pro Se Brief and then address the *Apprendi* issue.

B.

1.

Liberally construing the Pro Se Brief, we discern eight contentions of appellate error therein.  Six of those contentions readily fall within the scope of the appeal waiver

---

[9] *Apprendi* and its progeny require that any fact that increases a criminal penalty beyond the prescribed statutory maximum must be charged in the indictment and proved to the jury beyond a reasonable doubt.  *See* 530 U.S. at 490.  Where the defendant has pleaded guilty, the defendant's admissions during the plea colloquy can satisfy this requirement.  *See United States v. Booker*, 543 U.S. 220, 232 (2005); *United States v. Milam*, 443 F.3d 382, 387 (4th Cir. 2006).

and are barred by the waiver and Cohen's guilty pleas.[10] *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (recognizing that where a defendant "has solemnly admitted in open court that he is in fact guilty, . . . he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea"). By two other contentions pursued in the Pro Se Brief, Cohen contends that the district court erred in rejecting his effort to withdraw his guilty pleas. Those contentions are also barred — albeit by the appeal waiver only — and they warrant a brief discussion.

2.

In the Pro Se Brief's remaining two contentions, Cohen argues that the district court erred in denying his motion to withdraw his guilty pleas. He relies on two independent grounds for that claim. First, he says that he is legally innocent on Count Twenty, in that his conviction was not based on an appropriate predicate offense. Second, Cohen argues that the court erred because misrepresentations by the prosecutors in the plea negotiations rendered his guilty pleas neither knowing nor voluntary.

As explained above in Part III.A, our Appeal Waiver Ruling concluded that "Cohen knowingly and intelligently waived his rights to appeal both his convictions and sentence." Cohen ignores the controlling terms of the appeal waiver contained in the

---

[10] Six issues in the Pro Se Brief are readily barred by the appeal waiver and the guilty pleas. Those are that the court erred by (1) imposing a sentencing enhancement for obstructing justice; (2) holding Cohen in pretrial detention; (3) declining to dismiss the Indictment for prosecutorial misconduct; (4) imposing restitution as part of Cohen's sentence; and (5) failing to dismiss the Indictment due to speedy trial violations. In his sixth barred issue, Cohen maintains that the court's cumulative errors deprived the district court proceedings of fundamental fairness and due process.

26

Plea Agreement he made with the United States Attorney. That is, Cohen waived his "right . . . to appeal [his] conviction," he agreed to "withdraw all pending motions in the district court and to not file any further motions in the district court," and he explicitly agreed that he "knowingly, intentionally, and voluntarily waive[d] his right to attack collaterally the plea being offered in the instant case." J.A. 329-30.[11] Again, in this appeal, we must assess the appeal waiver's breadth and its applicability to asserted contentions of error.

In his Pro Se Brief, Cohen fails to explain how his challenges to the district court's denial of his motion to withdraw his guilty pleas are not subsumed by the appeal waiver. An appeal waiver will not bar appellate review where a "plea-withdrawal motion incorporates a *colorable* claim that the plea agreement itself — and hence the waiver of appeal rights that it contains — is tainted by constitutional error." *See United States v. Attar*, 38 F.3d 727, 733 n.2 (4th Cir. 1994). For example, we have recognized that an appeal waiver does not preclude at least three types of claims: (1) challenges that a sentence exceeds the statutory maximum or is based upon a constitutionally infirm factor such as race; (2) appeals from the denial of a motion to withdraw guilty pleas due to ineffective assistance of counsel; and (3) a contention that "proceedings following entry

---

[11] It almost goes without saying that Cohen's motion to withdraw his guilty pleas — filed nearly two months after the pleas were entered — itself breached the Plea Agreement. Cohen had specifically agreed therein "not to file any further motions in the district court." J.A. 330.

27

of the guilty plea were conducted in violation of his Sixth Amendment right to counsel." *See United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005).

Cohen's contentions of error with respect to his guilty pleas do not qualify as the types of claims recounted in *Johnson*. Cohen's claim of legal innocence is simply an effort to again contest his conviction on Count Twenty, and thus falls within the plain terms of the appeal waiver. In his other contention about the guilty pleas, Cohen maintains that his only reason for entering into the Plea Agreement was to make his wife whole. *See* Pro Se Br. 36. The record simply does not support Cohen's all-or-nothing statement about his motive for entering into the Agreement. Cohen's second contention about the guilty pleas is obviously just another effort to contest his underlying convictions and does not present a colorable constitutional claim. *See, e.g.*, *Attar*, 38 F.3d at 733 n.2 (recognizing that "defendant's desire to spare his family the embarrassment of trial is not sufficient to render his decision to plead guilty 'involuntary' in the constitutional sense; if it were, virtually every guilty plea would be invalid").[12]

Put simply, we discern no colorable claim of constitutional error in the two unresolved contentions of the Pro Se Brief concerning Cohen's guilty pleas. Thus,

---

[12] As explained in Part I.D.2 hereof, the district court conducted an extensive evidentiary hearing and confirmed Cohen's knowing and voluntary guilty pleas. The court denied Cohen's motion to withdraw his guilty pleas by way of a carefully crafted and thorough memorandum opinion. *See United States v. Cohen*, No. 1:14-cr-0310 (D. Md. June 8, 2015), ECF No. 385. In those proceedings, Cohen again received an excess of judicial solicitude and process. If we were to reach and address the merits of the contentions in the Pro Se Brief concerning his guilty pleas, we would readily conclude that the district court did not err in ruling that Cohen entered his guilty pleas knowingly and voluntarily.

28

nothing places them beyond the breadth of the appeal waiver, and those contentions are therefore also dismissed.

## C.

Finally, we turn to the *Apprendi* issue that Cohen pursues with respect to Count Twenty-Four. Cohen maintains that his sentence on Count Twenty-Four contravened the Supreme Court's ruling in *Apprendi v. New Jersey*, in that neither the Indictment nor the facts admitted in the plea colloquy permit the application of an enhanced 15-year sentence. *See* 530 U.S. 466 (2000). Because we have recognized that an *Apprendi* issue can fall outside the scope of an appeal waiver, we will carefully assess that issue. *See United States v. General*, 278 F.3d 389, 399 n.4 (4th Cir. 2002) (recognizing that challenges to a defendant's sentence pursuant to *Apprendi* "are not subject to contractual waivers"); *see also Johnson*, 410 F.3d at 151 (explaining that "a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute").

Count Twenty-Four charged Cohen with making a false statement to an insurance regulator, in violation of 18 U.S.C. 1033(a).[13] A violation of § 1033(a) normally provides for a maximum statutory sentence of "not more than 10 years." *Id.*

---

[13] Count Twenty-Four of the Indictment alleged, in pertinent part, that Cohen "did knowingly, willfully, and with the intent to deceive, make materially false statements . . . to the Delaware Insurance Commissioner and her agents, for the purpose of influencing" their official actions. *See* J.A. 83. That offense was predicated on a letter that Cohen sent to the Delaware insurance regulators which falsely stated that IIC "had $5.1 million in unencumbered cash on deposit at Susquehanna Bank." *Id.* at 84.

§ 1033(a)(2). However, an enhanced penalty of "not more than 15 years" is authorized if the false statement "jeopardized the safety and soundness of an insurer and was a significant cause of such insurer being placed in conservation, rehabilitation, or liquidation by an appropriate court." *Id.*

Because there is arguable merit to the *Apprendi* issue, we secured post-argument supplemental briefs on that question. In Cohen's supplemental brief, his counsel urges us to recognize the merits of the *Apprendi* issue and remand for resentencing on all four offenses. More specifically, the brief argues that the Indictment and plea colloquy lack the factual support necessary to warrant an enhanced 15-year sentence for the Count Twenty-Four offense. Relying on our decision in *United States v. Catone*, Cohen's brief also maintains that we should review the *Apprendi* issue for harmless error and that the *Apprendi* error was not harmless. *See Catone*, 769 F.3d 866 (4th Cir. 2014). The government, on the other hand, maintains that we should reject Cohen's *Apprendi* contention and affirm his aggregate sentence. The government emphasizes facts elicited in Cohen's sentencing proceedings that support the enhanced 15-year sentence for the § 1033(a) offense. The government also maintains that we can review the *Apprendi* issue for plain error only, and that — even assuming a plain error occurred — we should not recognize it.

There are important procedural facts that guide our identification of the proper standard of review on the *Apprendi* issue. First, it is elementary that an issue not presented fairly in an appellant's opening appellate brief is thereby waived. *See United*

*States v. Lesson*, 453 F.3d 631, 638 n.4 (4th Cir. 2006).[14]  And the *Apprendi* issue was not raised in either the opening appellate brief or in the Pro Se Brief.  Second, Cohen simply "has no right to raise substantive issues while he is represented by counsel" in this appeal.  *See United States v. Washington*, 743 F.3d 938, 941 n.1 (internal quotation marks omitted).  Because Cohen is represented by appellate counsel, we could readily reject the *Apprendi* issue on that basis.  Cohen — who was then representing himself pro se — also failed to raise and preserve the *Apprendi* issue in the district court.  In these circumstances, it is clear that we can only review the *Apprendi* issue for plain error.  *See United States v. Promise*, 255 F.3d 150, 154 (4th Cir. 2001) (relying on *United States v. Olano*, 507 U.S. 725, 731-32 (1993)).  We are satisfied that the plain error standard applies to the *Apprendi* issue, and we will only assess its merits on that basis.

To prevail on plain error review, an appellant must show (1) that the district court erred, (2) that the error was plain, and (3) that the error affected his substantial rights.  *See Olano*, 507 U.S. at 734.  To satisfy the third prong of that test, the appellant must show that the error actually "affected the outcome of the district court proceedings."  *Id.* If each of those three requirements are satisfied, we possess discretion on whether to recognize the error, but we "should not do so unless the error 'seriously affects the

---

[14] Giving Cohen substantial leeway in these proceedings and treating his Pro Se Brief as a second chance at an opening brief, Cohen yet again failed to raise the *Apprendi* issue in a timely manner.  *See United States v. Cohen*, No. 15-4780 (4th Cir. Feb. 14, 2017), ECF No. 71.  He thus pursues the *Apprendi* issue in a tardy fashion.  *See United States v. Jones*, 308 F.3d 425, 427 n.1 (4th Cir. 2002) (concluding that defendant waived *Apprendi* claim by raising it in Rule 28(j) letter rather than in his initial brief).

fairness, integrity or public reputation of judicial proceedings.'" *United States v. Hargrove*, 625 F.3d 170, 184 (4th Cir. 2010) (quoting *Olano*, 507 U.S. at 736).

Assuming that the first two plain error requirements are satisfied on the *Apprendi* issue — that the court erred on the statutory maximum as to Count Twenty-Four, and that the error was plain — the *Apprendi* issue nevertheless fails to pass muster on plain error's third prong. If the assumed sentencing error had not occurred, the applicable statutory maximum for Count Twenty-Four would have been capped at 10 years rather than 15 years. Cohen's aggregate sentencing exposure would have been 60 months less, that is, 600 months rather than 660 months. To satisfy the third prong of *Olano*, however, the plain error must have affected Cohen's substantial rights by altering the "outcome of the district court proceedings." *Olano*, 507 U.S. at 734. And there is ample evidence in this record to belie that proposition.

First, Cohen understood that he was pleading guilty to a § 1033(a) offense that carried a maximum 15-year sentence. That fact was included in the Plea Agreement, the PSR, and carefully explained to Cohen during the Rule 11 plea colloquy. *See* J.A. 324, 288, 1952. Moreover, Cohen's aggregate sentence of 444 months was well within a 600-month statutory maximum. Additionally, the sentencing court clearly intended to impose a 444-month sentence on Cohen, rather than an effective life sentence. The court explained that "this case requires the imposition of a severe punishment, but not . . . what would essentially be a life sentence for Mr. Cohen." *Id.* at 2000. After weighing the arguments of the parties, the court varied downward to a substantial extent in order to impose the 444-month sentence, which is "in total, a 37-year sentence." *Id.* at 1940. The

32

government reasonably observes that, if the court had been constrained by a five-year decrease in the statutory maximum on Count Twenty-Four, it could readily have apportioned the same 444-month sentence differently among Cohen's four convictions. In these circumstances, we are satisfied that the plain error did not impact Cohen's substantial rights or affect the outcome of the sentencing proceedings.

Finally, even if Cohen could satisfy the third prong of the plain error standard, we would decline to provide him with any relief. *See Promise*, 255 F.3d at 161 (recognizing that we are "not obligated to notice even structural errors on plain error review, notwithstanding that structural errors are per se reversible when reviewed under a harmless error standard"). Put simply, assuming a plain error occurred, that error does not undermine the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Brown*, 757 F.3d 183, 194 (4th Cir. 2014). In any event, we would therefore not award any relief to Cohen on the *Apprendi* issue.


V.

Pursuant to the foregoing, we dismiss all contentions of error presented — and sought to be presented — on behalf of Cohen in the appellate briefs and in his pro se supplemental submissions, save for the Sixth Amendment issue and the *Apprendi* issue. As to those two contentions, we affirm the district court.

*DISMISSED IN PART AND*
*AFFIRMED IN PART*

33