**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4282**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

MOHAMMAD ABDEL RAHMAN AL QATAMIN,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Spartanburg. Donald C. Coggins, Jr., District Judge. (7:18-cr-00587-DCC-1)

Submitted: May 22, 2020                                      Decided: June 16, 2020

Before AGEE, WYNN, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Kimberly H. Albro, Assistant Federal Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant. Joseph Attias, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Sherri A. Lydon, United States Attorney, William J. Watkins, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Mohammad Abdel Rahman Al Qatamin pleaded guilty to one count of knowingly and willfully concealing and covering up a material fact by trick and scheme in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI) and that involved international terrorism, in violation of 18 U.S.C. § 1001(a)(1). Al Qatamin does not challenge the validity of his conviction on appeal, but instead argues his sentence is procedurally unreasonable for two reasons that entitle him to have his sentenced vacated and to be resentenced. First, he contends the district court plainly erred by calculating his advisory United States Sentencing Guidelines (U.S.S.G.) range based on § 2J1.2, which applies to certain § 1001 offenses—including those involving international terrorism— rather than § 2B1.1, which applies more generally to § 1001 offenses. Second, he asserts the district court clearly erred in applying a two-level offense enhancement under U.S.S.G. § 2J1.2(b)(3) because his offense involved the omission of materials turned over to the Government rather than the destruction or alteration of any materials. Because the district court did not commit any reversible error when sentencing Al Qatamin, we affirm.

I.

From 2012 to 2017, Al Qatamin worked as a paid confidential source for the FBI. The agreement with the FBI required him to be truthful, disclose all social media accounts, and refrain from taking any independent or unauthorized actions on behalf of the United States.

2

In January 2017, Al Qatamin used a social media account known to the FBI to contact "UC-1," an individual he believed to be an American fighter for the Islamic State of Iraq and Syria (ISIS) located in Syria, but who actually worked for the FBI. Although Al Qatamin was not authorized to contact UC-1 as part of his work with the FBI, he nonetheless invited UC-1 to an encrypted chatroom where he disclosed that he needed to speak with a non-Syrian ISIS "brother" about "[a] matter of life and death." J.A. 37. UC-1 replied that he could arrange an introduction and pass along any message.

Al Qatamin then directed UC-1 to a social media account the FBI did not know about and used its encryption features to send UC-1 an audio message disclosing that he had learned about "bad stuff" and "spies" around the city of Al-Bab, Syria that he wanted to relay to ISIS. J.A. 37. Al Qatamin urged UC-1 to get the message to ISIS fighters to vacate a particular area and he sent a satellite image with a red crosshair mark on a mosque, indicating that he understood the area to be an ISIS ammunition storage dump that Turkish or Coalition forces may be targeting. He also shared that Turks knew about tunnels ISIS fighters used and hid in throughout the city. Lastly, he sent UC-1 an audio recording of a meeting involving five Syrian and Turkish individuals discussing strategies and intelligence about upcoming military operations against ISIS in the area.

The next day, an individual identified as UC-2 introduced himself to Al Qatamin on social media as the non-Syrian ISIS fighter UC-1 had contacted on Al Qatamin's behalf. While UC-2 posed as a high-ranking ISIS official, he actually was working undercover for the FBI. Using an encrypted social media account that was unknown to the FBI, Al

3

Qatamin shared with UC-2 the same information he shared previously with UC-1, including the audio recording of five individuals discussing military operations in the area.

About a week later, the FBI asked Al Qatamin whether he had any information about the location of ISIS fighters. He said he did not. They asked if he had received any information about ISIS that he had attempted to share with anyone. He said he had not. The meeting ended, but about ninety minutes later, Al Qatamin telephoned his FBI contacts to admit that he had received information about Turkish military operations against ISIS, but that the information was outdated and incorrect.

The FBI then directed Al Qatamin to disclose all his communications and relevant documents to them, but he failed to do so. For example, he gave them a USB thumb drive containing the audio recording of five persons discussing military operations, but told the FBI he had not shared the recording with anyone. Moreover, he only partially disclosed his conversation with UC-1 and entirely concealed his conversation with UC-2. Al Qatamin also left out his knowledge "about a [C]oalition attack and the use of the tunnels" in and around Al-Bab. J.A. 41.

In June 2018 Al Qatamin was indicted on one count of violating § 1001 because he had:

> in a matter within the jurisdiction of the [FBI] and involving international terrorism, knowingly and willfully concealed and covered up by trick and scheme a material fact, that is he provided information about a pending military attack by Turkish and Coalition Forces targeting [ISIS] figures in Al-Bab, Syria, to individuals he believed were ISIS fighters in Syria.

J.A. 9.

4

Al Qatamin pleaded guilty without the benefit of a written agreement. At the plea hearing, the Government recited the baseline elements of a § 1001(a) offense and explained that because Al Qatamin's offense involved international terrorism, he faced the enhanced statutory maximum term of eight years' imprisonment. Next, it summarized the underlying offense conduct, as described earlier. In response, Al Qatamin stated he understood the indictment, the charge against him, and his sentencing exposure. Further, he admitted that the Government's summary of his conduct was accurate and that he had engaged in the described acts. Al Qatamin also stated that his motive for engaging in this conduct was not to communicate information to ISIS, but his independent hunt for ISIS "high ups." J.A. 43. This comment led to a discussion between the parties and the Court, at the end of which Al Qatamin reiterated that he had knowingly and willfully engaged in the charged conduct and that he desired to plead guilty. The district court accepted the plea and directed preparation of a pre-sentence report (PSR).

The PSR set Al Qatamin's base offense level at fourteen under U.S.S.G. § 2J1.2(a) with a twelve-level enhancement under § 2J1.2(b)(1)(C) and a two-level offense enhancement under § 2J1.2(b)(3) for alteration or destruction of materials. The PSR reduced his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b).[1] These adjustments set Al Qatamin's offense level at twenty-five, which—when

---

[1] Section 2J1.2(b)(3) applies when

the offense (A) involved the destruction, alteration, or fabrication of a substantial number of records, documents, or tangible objects; (B) involved the selection of any essential or especially probative record, document, or

coupled with a criminal history category of I—yielded a Guidelines range of fifty-seven to seventy-one months' imprisonment.

At sentencing, Al Qatamin did not object to calculating his initial offense level and enhancement under the Guidelines provisions for § 1001 offenses involving international terrorism, but he did object to the two-level enhancement under § 2J1.2(b)(3) for alteration or destruction of materials. Specifically, he argued the enhancement did not apply to his case because he had not destroyed or altered any records, but merely had omitted some materials in what he provided to the FBI. The district court overruled the objection and adopted the PSR's recommended Guideline calculation.

After listening to the parties' 18 U.S.C. § 3553(a) arguments, the district court sentenced Al Qatamin to the bottom of the Guidelines range: fifty-seven months' imprisonment. It cited the nature of Al Qatamin's offense, his prior work with the FBI, and the need to promote respect for the law as specific reasons justifying this sentence. In addition, the district court observed that it had also taken "into consideration" that had it sustained the objection to the § 2J1.2(b)(3) enhancement, the applicable Guidelines range would have been forty-six to fifty-seven months' imprisonment. J.A. 88.

Al Qatamin noted a timely appeal, and the Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2).

---

tangible object, to destroy or alter; or (C) was otherwise extensive in scope, planning, or preparation[.]

Al Qatamin's PSR indicated the § 2J1.2(b)(3) enhancement applied because he had turned over selective and incomplete information in the materials he provided to the FBI.

II.

Improperly calculating a defendant's Sentencing Guidelines range is a significant procedural error that may warrant reversal if the Court cannot determine its harmlessness. *United States v. Cox*, 744 F.3d 305, 308 (4th Cir. 2014). When reviewing the Guidelines calculation on appeal, the Court ordinarily reviews legal conclusions *de novo* and factual findings for clear error. *Id.* However, any unpreserved sentencing challenges are reviewed for plain error, which requires an appellant to "show (1) there was error; (2) the error was plain under current law; and (3) the error affected [his] substantial rights." *United States v. Greene*, 704 F.3d 298, 304 (4th Cir. 2013). Even then, the Court will notice the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.*

Al Qatamin asserts the district court improperly calculated his Guidelines range in two respects: first, by using the Guidelines provisions associated with violations of § 1001 involving international terrorism and, second, by enhancing the offense level by two based on the alteration or destruction of materials. We will address each argument in turn.

A.

Al Qatamin first challenges the district court's use of U.S.S.G. § 2J1.2 for § 1001 offenses involving international terrorism to determine his offense level rather than using U.S.S.G. § 2B1.1. The Sentencing Guidelines manual contains different provisions to determine the offense level for § 1001 offenses based on the specific characteristics of the

7

offense.[2] The generally applicable base offense level for § 1001 offenses is six, as found in § 2B1.1(a)(2). But under § 2J1.2(a) and (b)(1)(C), a § 1001 offense involving international terrorism has a base offense level of fourteen as well as a twelve-level enhancement.

Al Qatamin asserts that his conviction did not involve international terrorism and that his offense level should have been determined under § 2B1.1. To support this view, he points to two aspects of the plea hearing: first, the Government's failure to list international terrorism as an element of his offense and second, his statement that he had not initiated the communications with UC-1 and UC-2 to help ISIS fighters. Because Al Qatamin did not object to the use of § 2J1.2 to set his offense level in the district court, we review this issue for plain error. *See Greene*, 704 F.3d at 303–04.

Having considered the record, we conclude that Al Qatamin has not met his burden on plain-error review because he has not demonstrated any error. The indictment charged Al Qatamin with violating § 1001(a)(1) and not only directly stated that his particular conduct "involve[d] international terrorism," but also described his having concealed from

---

[2] The baseline statutory maximum term of imprisonment for violations of § 1001 is five years. But if the offense "involves international or domestic terrorism (as defined in section 2331)," the offense carries an eight-year maximum term. 18 U.S.C. § 1001(a).

Both § 1001 and U.S.S.G. § 2J1.2 cross-reference 18 U.S.C. § 2331's definition of "international terrorism," which includes activities that "involve . . . acts dangerous to human life that are a violation of the criminal laws of the United States" and that "appear to be intended . . . (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping[,]" and "occur primarily outside the territorial jurisdiction of the United States[.]" *See* 18 U.S.C. § 1001(a); U.S.S.G. § 2J1.2 cmt. n.1.

the FBI that he had provided information to individuals he believed to be ISIS fighters in Syria. J.A. 9. At the plea hearing, the Government described Al Qatamin's conduct as "involving international terrorism" and informed him that, consequently, he was subject to the eight-year statutory maximum term of imprisonment. J.A. 25. Moreover, the Government summarized Al Qatamin's conduct, which consisted of unauthorized communication of sensitive information to individuals he believed to be ISIS fighters, and then denying it when questioned by the FBI. Al Qatamin agreed to plead guilty to the charged offense, acknowledged that his sentence would be based on the terms applicable to the subset of § 1001 offenses involving international terrorism, and repeatedly acknowledged that he had engaged in the described conduct. Thus, as part of his guilty plea, Al Qatamin expressly admitted to committing a § 1001 offense involving international terrorism. *United States v. Cohen*, 888 F.3d 667, 682 n.9 (4th Cir. 2018) (stating that although *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) "require[s] that any fact that increases a criminal penalty beyond the prescribed statutory maximum must be charged in the indictment and proved to the jury beyond a reasonable doubt," when a "defendant has pleaded guilty, the defendant's admissions during the plea colloquy can satisfy this requirement").[3]

---

[3] Al Qatamin's objection concerning his motive is irrelevant, as a defendant's subjective intent is not at issue when determining whether his misrepresentations to the FBI involved international terrorism. Moreover, at no time did Al Qatamin attempt to withdraw his guilty plea and he acknowledges that ISIS is a designated international terrorist organization.

On this record, no question exists that Al Qatamin's guilty plea was for a violation of § 1001(a)(1) involving international terrorism. It necessarily follows that § 2J1.2 was the proper provision to use when determining his Guidelines offense level, and the district court did not err in doing so.

B.

Next, Al Qatamin challenges the district court's imposition of a two-level offense enhancement under § 2J1.2(b)(3). Al Qatamin contends that because he merely omitted certain records turned over to the FBI, his conduct does not fall within § 2J1.2(b)(3)'s scope, which refers to altering or destroying records.

We conclude that even if the district court erred in imposing this enhancement, any error was harmless and therefore does not require us to vacate Al Qatamin's sentence. Under our assumed-error harmlessness review, we can "assume that a sentencing error occurred and proceed to examine whether the error affected the sentence imposed" because only errors that affect a defendant's substantial rights will result in reversal. *United States v. McDonald*, 850 F.3d 640, 643 (4th Cir. 2017). For the Court to deem a Guidelines error harmless, it must determine: "(1) the district court would have reached the same result even if it had decided the [G]uidelines issue the other way, and (2) the sentence would be reasonable even if the [G]uidelines issue had been decided in the defendant's favor." *United States v. Gomez-Jimenez*, 750 F.3d 370, 382 (4th Cir. 2014) (internal quotation marks omitted). We readily conclude that both inquiries are satisfied in this case.

First, the district court's comments at sentencing show that it would have sentenced Al Qatamin to the same sentence regardless of how it ruled on his objection to the

10

§ 2J1.2(b)(3) enhancement. After imposing a sentence of fifty-seven months' imprisonment, the court observed that in deciding upon this sentence, it had taken Al Qatamin's objection "into consideration" as part of its basis for imposing the sentence. J.A. 88. It specifically "note[d] for the record that had [it] sustained that objection, it would have changed [Al Qatamin's] [G]uideline range to 47 to 57 months." J.A. 88. Although the district court did not explicitly say so, the clear conclusion to be drawn from its remarks is that it specifically chose a sentence at the point of intersection between the two argued-for sentencing ranges. This record demonstrates that the district court would have sentenced Al Qatamin to the same sentence regardless of how it ruled on his challenge to the imposition of the § 2J1.2(b)(3) enhancement, thus satisfying the first step of the harmlessness inquiry. *See United States v. Savillon-Matute*, 636 F.3d 119, 124 (4th Cir. 2011) (holding the first question was satisfied even though "the district court did not specifically state that it would give the same sentence" because its explanation "consistent[ly] indicat[ed] that it would have reached the same result even if it had decided the [G]uidelines issue the other way").

Second, a term of fifty-seven months' imprisonment is substantively reasonable. Indeed, because Al Qatamin's sentence falls within the Guidelines range, had the objection to this enhancement been sustained, the Court would have presumed that the sentence was reasonable. *See United States v. Zelaya*, 908 F.3d 920, 930 (4th Cir. 2018) ("We presume that sentences within or below the [G]uidelines range are reasonable."). Al Qatamin's arguments reinforce this conclusion because he points to nothing specific in the § 3553(a) analysis that made his sentence substantively unreasonable. Instead, he argues that the

11

procedural deficiencies alone resulted in a reversible sentence. But the Court requires more to vacate a sentence and authorize resentencing. Further, the district court's explanation for its sentence under § 3553(a) bolsters our conclusion that the sentence is substantively reasonable, as that explanation demonstrates the district court's considered determination that the sentence imposed was appropriate to account for the seriousness of Al Qatamin's deception, the risk he created to Coalition forces in Syria, and the need to promote respect for the law.

Because the record fully supports the harmlessness of any error in imposing the § 2J1.2(b)(3) enhancement when calculating Al Qatamin's Guidelines range, we will not vacate his sentence.

III.

For the reasons provided above, the judgment of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid the decisional process.

*AFFIRMED*