# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN THE MATTER OF THE ) 
LIQUIDATION OF ) C.A. No. 8601-VCZ
INDEMNITY INSURANCE )
CORPORATION, RRG )

## MEMORANDUM OPINION

Date Submitted: October 4, 2018
Date Decided: December 6, 2018

Christopher P. Simon and Kevin S. Mann, CROSS & SIMON, LLC, Wilmington, Delaware; *Attorneys for the Honorable Trinidad Navarro, Insurance Commissioner of the State of Delaware, as Receiver for Indemnity Insurance Company, RRG, in Liquidation*

David S. Eagle and Sally E. Veghte, KLEHR HARRISON HARVEY BRANZBURG LLP, Wilmington, Delaware; *Attorneys for Intervening Petitioner Branch Banking & Trust Company*

Jeffrey B. Cohen, Bruceton Mills, West Virginia; *Proposed Intervenor*

**ZURN, Vice Chancellor**

The founder of an insurance company pled guilty to fraud involving that company and was sentenced to decades in federal prison. This Court placed the company into rehabilitation in 2013, and then into liquidation in 2014. The company consented to those proceedings. Now, the founder has filed his fourth motion to intervene,[1] *pro se*, to challenge findings from 2014 that the company was insolvent. Although the Court has reviewed the *pro se* submission leniently, the motion is untimely, fails to assert a valid interest impaired or impeded by the company's continued liquidation, and is precluded by this Court's rulings on previous motions to intervene. For these reasons, the motion is denied.

## I.    BACKGROUND

This matter concerns the liquidation of Indemnity Insurance Corporation, RRG ("IIC") under Delaware's Insurers Liquidation Act.[2] Because the long history of this proceeding is well-documented in previous orders and opinions, this decision sets out only the facts relevant to the motion at hand.[3]

IIC is a Delaware risk retention group founded by non-party Jeffrey Cohen. As of the date IIC entered liquidation, RB Entertainment Ventures, LLC ("RBE")

---

[1]  The first three motions were filed by the founder's controlled entity.

[2]  18 *Del. C.* §§ 5901, *et seq.* (the "Insurers Liquidation Act").

[3]  *See, e.g., Cohen v. State ex rel. Stewart*, 89 A.3d 65 (Del. 2014) [hereinafter *Cohen Delaware*]; *Matter of Rehab. of Indem. Ins. Corp., RRG*, 2014 WL 1154057 (Del. Ch. Mar. 21, 2014).

was the majority stockholder of IIC.[4]  Cohen, in turn, controls RBE.  In 2013, the Insurance Commissioner of the State of Delaware (the "Commissioner") uncovered troubling evidence of IIC's precarious financial position and years of fraud conducted by Cohen.  As a result, the Commissioner initiated delinquency proceedings against IIC under the Insurers Liquidation Act.  On April 10, 2014, the Court entered the Liquidation and Injunction Order With Bar Date (the "Liquidation Order"), placing IIC into liquidation.[5]

On June 24, 2014, federal prosecutors secured an indictment against Cohen for various alleged fraudulent schemes and other criminal activities, including those related to IIC.[6]  The operative superseding indictment, issued on December 2, 2014, charged Cohen with thirty-one offenses (the "Criminal Matter").[7]  On June 5, 2015, Cohen signed a plea agreement admitting to fraudulent conduct related to IIC.[8]  On

---

[4]  The parties dispute the details of IIC's ownership.  This opinion need not resolve those issues and assumes, without deciding, that RBE was a stockholder of IIC as of April 10, 2014, when IIC was placed into liquidation, and that Cohen controls RBE.

[5]  Docket Item ("D.I.") 444.

[6]  *United States v. Cohen*, 888 F.3d 667, 671 (4th Cir. 2018) [hereinafter *Cohen Criminal*].

[7]  *Id.*

[8]  *Id.* at 674-75.  The Court took judicial notice of Cohen's signed plea agreement on December 5, 2018.  D.I. 658.  The plea agreement stipulates, among other things, that "Cohen did knowingly and willfully devise and intend to devise a scheme and artifice to defraud, and to obtain insurance premiums, by means of materially false and fraudulent pretenses, representations, and promises, regarding the financial status of [IIC], and other Cohen controlled entities to some policyholders, a rating agency, independent financial

December 10, 2015, the District Court sentenced him to thirty-seven years in prison.[9]

Cohen appealed his convictions and sentences. That appeal was still pending when Cohen filed the current motion to intervene (the "Motion") in early 2018. But on April 25, 2018, the United States Court of Appeals for the Fourth Circuit dismissed portions of Cohen's appeal and affirmed the rulings of the District Court as to the remaining issues.[10]

According to the Motion, Cohen seeks to intervene in order to assert his Rule 60 Independent Action for Relief from Court Order Based on Fraud on the Court (the "Rule 60 Complaint").[11] The Motion is the fourth request to intervene filed by either Cohen or the entity he controls, RBE.[12] Other than IIC's ongoing liquidation, the current live dispute in this action is a petition for declaratory judgment brought by intervening party Branch Banking & Trust Company ("BB&T") on May 27, 2018,[13] which is set for argument on summary judgment on January 22, 2019, and for trial beginning on May 6, 2019. But Cohen does not seek to intervene in the

---

auditors, the DC Insurance Commissioner, and the Delaware Insurance Commissioner." C.A. No. 8985-VCZ, D.I. 235, Ex. A, at Cohen Factual Stipulation, 1.

[9] *Cohen Criminal*, 888 F.3d at 678.

[10] *Id.* at 682.

[11] D.I. 585-87.

[12] Cohen is a party in several other actions before this Court, including C.A. Nos. 8985-VCZ, 2018-0269-MTZ, 2018-0406-MTZ, and 2018-0268-MTZ.

[13] D.I. 512.

dispute between the Receiver and BB&T. He instead seeks to reopen and vacate the four-year old Liquidation Order, asserting that he can only protect his interests, including his liberty interest, by contesting the issue of IIC's insolvency.

## A. The Seizure Order And RBE's First Motion To Intervene

Cohen, through RBE, first attempted to intervene shortly after the initiation of the delinquency proceedings. On May 30, 2013, this Court entered a Confidential Seizure and Injunction Order that authorized the Commissioner to take control of IIC's business and assets.[14] The petition supporting that order alleged a concerning story of Cohen's frauds and IIC's financial strain.[15] On July 16, 2013, following the seizure and review of IIC's books, records, and other assets, the Commissioner filed a Verified Petition for Entry of Liquidation and Injunction Order (the "Initial Liquidation Petition").[16] The Initial Liquidation Petition focused on IIC's unsound financial condition and its hazardous business practices, including Cohen's alleged fraudulent schemes.

On August 13, 2013, RBE moved to intervene generally on the basis of its majority stockholder status in IIC.[17] Following briefing and argument, on August

---

[14] D.I. 4.

[15] D.I. 1.

[16] D.I. 20.

[17] D.I. 46.

22, 2013, the Court ruled that RBE, in its capacity as a stockholder, was unable to intervene permissively or as a matter of right in this proceeding under Court of Chancery Rule 24 (the "First Intervention Ruling").[18]  But to limit this action's preclusive effects on RBE or Cohen in other matters, the Court denied the motion without prejudice as to later intervention on direct issues of Cohen's fraud related to IIC, or other direct relief (*e.g.*, RBE's voting rights), and invited a renewed motion to intervene on narrower grounds.[19]  The Court specifically foreclosed intervention by RBE on issues of IIC's valuation, solvency, and business viability.[20]  RBE and Cohen did not file a renewed motion or appeal the First Intervention Ruling.

### B.    The Rehabilitation Order And RBE's Second Motion To Intervene

On November 6, 2013, the Commissioner petitioned for an order to rehabilitate, rather than liquidate, IIC (the "Rehabilitation Petition").[21]  The Commissioner explained that IIC's management and Board had determined that a

---

[18]  *See* D.I. 306 at 34:5-39:23 ("the First Intervention Ruling Hearing").

[19]  *Id.* at 37:18-39:8.

[20]  *Id.*; *see also Cohen Delaware*, 89 A.3d at 74, 94 (noting that "Delaware has not yet determined the standing of a stockholder to oppose a delinquency petition," but that "[j]urisdictions that have considered the issue have typically held that stockholders do not have standing to intervene in a delinquency proceeding," and that the First Intervention Ruling "held that as a general matter, stockholders do not have any official role as parties in a delinquency proceeding").

[21]  D.I. 228.

rehabilitation—or, failing that, a liquidation—of IIC was in the best interests of IIC and its policyholders.[22]  RBE moved to intervene a second time.[23]

On November 7, 2013, the Court placed IIC into rehabilitation, appointed the Commissioner as IIC's Receiver, and denied RBE's motion, ruling that RBE could pursue any claims against IIC's estate in the manner contemplated by the rehabilitation order.[24]  On November 8, 2013, Cohen appealed that order and a November 1, 2013, order related to sanctions.[25]  On April 9, 2014, the Delaware Supreme Court affirmed both orders.[26]

## C.    The Liquidation Order And RBE's Third Motion To Intervene

Unfortunately, the Receiver could not rehabilitate IIC.  On January 16, 2014, the Commissioner filed a second petition for liquidation[27] (the "Renewed Liquidation Petition"), expanding on the Initial Liquidation Petition and the Rehabilitation Petition.  The Commissioner sought to liquidate under several

---

[22]   *Id.* at ¶¶ 23-25.  On November 5, 2013, IIC confirmed that it consented to the Rehabilitation Petition.  D.I. 247.

[23]   D.I. 235.

[24]   D.I. 237.

[25]   D.I. 248.

[26]   *Cohen Delaware*, 89 A.3d at 70.

[27]   D.I. 341.

independent statutory grounds provided by Delaware's Insurers Liquidation Act.[28]

These included that IIC (i) was financially insolvent and impaired,[29] (ii) was in an unsound and hazardous condition to its policyholders, particularly due to Cohen's alleged frauds,[30] (iii) had concealed or removed assets,[31] (iv) had willfully violated Delaware insurance law,[32] (v) had refused to submit certain of its books, records, accounts, or affairs to examination by the Commissioner, again due to Cohen's alleged interference,[33] and (vi) had consented to the liquidation through its Board and management.[34]

On February 4, 2014, RBE moved to intervene for a third time, attaching a proposed answer to the Renewed Liquidation Petition.[35] The Court denied the motion (the "Third Intervention Ruling").[36] RBE's proposed answer did not contest

---

[28] 18 *Del. C.* § 5906 permits the Commissioner to apply for appointment as a receiver and direction to liquidate an insurer for a variety of independent statutory grounds, including those specified as grounds to direct rehabilitation of an insurer under 18 *Del. C.* § 5905.

[29] Ren. Liq. Pet. at ¶¶ 77-78; 18 *Del. C.* § 5905(1).

[30] Ren. Liq. Pet. at ¶¶ 79-81; 18 *Del. C.* § 5905(1)

[31] Ren. Liq. Pet. at ¶¶ 82-83; 18 *Del. C.* § 5905(3)

[32] Ren. Liq. Pet. at ¶¶ 84-91; 18 *Del. C.* § 5905(6)

[33] Ren. Liq. Pet. at ¶¶ 92-93; 18 *Del. C.* § 5905(2)

[34] Ren. Liq. Pet. at ¶¶ 93-95; 18 *Del. C.* § 5905(9).

[35] D.I. 357.

[36] *Matter of Rehab. of Indem. Ins. Corp., RRG*, 2014 WL 1154057.

the detailed allegations establishing various statutory bases for liquidation.[37] Instead, RBE disclaimed knowledge of many of the Renewed Liquidation Petition's allegations, including those related to Cohen's purported frauds, despite the imputation of Cohen's knowledge to RBE.[38] Because RBE's "proposed answer [did] not contest the substance of particularized and verified allegations, supported by documentary evidence, that provide adequate and independent bases for entry of a liquidation order," the Court found that "[g]ranting the motion to intervene at this point would be futile."[39]

The Court gave RBE ten days to "renew its motion to intervene with a new proposed answer that fairly responds to the substance of the allegations about Cohen's conduct" in the Renewed Liquidation Petition.[40] RBE and Cohen did not renew their motion or file an amended proposed answer.[41] On April 10, 2014, the Court entered the Liquidation Order.[42]

---

[37] *Id.* at *10.

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] RBE instead moved for reargument, which the Court denied on April 9, 2014. D.I. 426, 440.

[42] Cohen appealed the Liquidation Order and other orders (D.I. 451), but the Delaware Supreme Court dismissed the appeal for failure to prosecute and to pay the filing fee. *Cohen v. State ex rel. Stewart*, C.A. No. 193, 2014, D.I. 24 (Del. Sep. 4, 2014).

### D. Cohen's Rule 60 Actions And Fourth Motion To Intervene

On May 19, 2017, Cohen attempted to bring an independent action for fraud on the Court under Rule 60(b) without an accompanying motion to intervene in this proceeding.[43]  On August 18, 2017, the Court denied or dismissed Cohen's action because he was not a party to this proceeding, as required to seek Rule 60 relief.[44]

On February 8, 2018, Cohen filed the Motion and the attached Rule 60 Complaint.  The Motion is fully briefed.  On October 4, 2018, while the Motion was still pending, this action was reassigned to me.[45]

## II. ANALYSIS

While the Court reviews Cohen's *pro se* filings leniently,[46] the Motion suffers from a number of interlocking deficiencies and stands on positions that this Court already rejected when denying RBE's previous motions to intervene.  Cohen's Motion must be denied.

---

[43] D.I. 543.

[44] D.I. 564.

[45] D.I. 648.

[46] "While a *pro se* complaint 'may be held to a somewhat less stringent technical standard than formal pleadings drafted by lawyers,' self-representation is not a blank check for defect." *Quereguan v. New Castle Cty.*, 2006 WL 2925411, at *4 (Del. Ch. Sept. 20, 2006) (citation omitted); *see also Draper v. Med. Ctr. of Delaware*, 767 A.2d 796, 799 (Del. 2001) ("There is no different set of rules for *pro se* plaintiffs[.]").

## A. Cohen Is Not Entitled To Intervene.

Rule 24 governs intervention by non-parties. Rules 24(a) and (b) govern intervention of right and permissive intervention, respectively:

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) When a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

> (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) When a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.[47]

As this Court held in the Third Intervention Ruling, "[i]f [the party seeking intervention] is unable or unwilling to raise any litigable dispute, then permitting intervention would be futile."[48]

---

[47] Ct. Ch. R. 24.

[48] *Matter of Rehab. of Indem. Ins. Corp., RRG*, 2014 WL 1154057, at *10; *see also United Rentals, Inc. v. RAM Holdings, Inc.*, 2007 WL 4327770, at *1 (Del. Ch. Nov. 29, 2007) ("Necessarily, however, under either variety of intervention the applicant must, as a threshold matter, present a potentially valid claim.").

### 1. Cohen's Motion Is Untimely.

Cohen seeks intervention to vacate a four-year-old liquidation order. Intervention under Rule 24 requires "a timely application," and Cohen has failed to meet that standard.[49] His inexcusable delay in bringing the Motion, coupled with the potential prejudice to parties who have relied for years on the Liquidation Order and its claims administration process, render the Motion untimely.

Although Delaware law provides no bright-line rule for timeliness under Rule 24, "[t]he most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case."[50] "Timeliness is a fact specific analysis that rests in the sound discretion of the trial court."[51] "The court should consider two factors on a sliding scale: the inexcusableness of the delay and the prejudice to

---

[49] Ct. Ch. R. 24(a)-(b).

[50] *Great Am. Leasing Corp. v. Republic Bank*, 2003 WL 22389464, at *1 (Del. Ch. Oct. 3, 2003) (citation omitted) (denying motion to intervene as untimely due to nine-month delay).

[51] *Id.*

existing parties."[52] "If the delay is inexcusable, disruption to the schedule is reason enough to deny intervention."[53] Delays of even a few months can be untimely.[54]

When analyzing a delay under Rule 24, "[a] key factor is whether the potential intervenor 'was in a position to seek intervention at an earlier stage in the case.'"[55] The Liquidation Order was entered in 2014. While a few allegations in the Rule 60 Complaint relate to conduct from 2017,[56] most are based on conduct from years earlier. During the intervening years, the Court gave RBE, which Cohen

---

[52] *Id.* Cohen's ultimate relief sought under Rule 60 must also be timely. *In re U.S. Robotics Corp. Shareholders Litig.*, 1999 WL 160154, at *8 (Del. Ch. March 15, 1999) ("Although Court of Chancery Rule 60(b) does not include the time deadlines included in its Federal Rules of Civil Procedure counterpart, a party moving to reopen pursuant to Chancery Court Rule 60(b) must 'act without unreasonable delay [] in making his motion.'" (quoting *Schremp v. Marvel*, 405 A.2d 119, 120 (Del. 1979))).

[53] *See Great Am. Leasing Corp.*, 2003 WL 22389464, at *1.

[54] *See, e.g.*, *id.* (finding nine-month delay untimely under Rule 24); *CAPM Corp. v. Protegrity, Inc.*, 2001 WL 1360122, at *10-11 (Del. Ch. Oct. 30, 2001) (finding four-month delay untimely under Rule 24); *see also In re MCA, Inc.*, 774 A.2d 272, 276-78 (Del. Ch. 2000) (finding seven-year delay untimely under Rule 24), *aff'd sub nom. MCA, Inc. v. Matsushita Elec. Indus. Co.*, 785 A.2d 625 (Del. 2001).

[55] *Great Am. Leasing Corp.*, 2003 WL 22389464, at *1 (citation omitted); *see also CAPM Corp.*, 2001 WL 1360122, at *10-11 (finding that four-month delay from otherwise "active participant in the events leading up to and creating [the relevant] controversy" was a sufficiently prejudicial delay to deny Rule 24(b) intervention).

[56] Rule 60 Compl. at ¶¶ 31-35. As evidence of alleged frauds and inconsistencies regarding IIC's solvency, Cohen cites 2017 status and accounting reports in this action from the Receiver, and 2017 discovery responses Cohen received in another action relating to IIC (C.A. No. 8985-VCZ).

controls, multiple opportunities to renew defective motions to intervene.[57] Cohen and RBE did not do so. The Court extended its most recent invitation for a renewed motion to intervene in 2014.[58] Nearly four years passed before Cohen filed the Motion. Cohen's delay is inexcusable.[59]

Cohen's intervention would also severely prejudice the parties and non-parties affected by IIC's liquidation. Cohen requests an evidentiary hearing in support of vacating the four-year-old Liquidation Order. IIC consented to that order, and the Commissioner—now Receiver—has been implementing it for years. In that process, IIC's creditors and policyholders have been submitting claims to the Receiver to assert and settle their rights. Reopening the long-closed solvency proceedings at the heart of this action would interrupt those efforts and prejudice both the Receiver and third parties operating under the Liquidation Order.

The Receiver and IIC's creditors and policyholders are already deep into the claims administration process under Delaware's Insurers Liquidation Act and the Liquidation Order. "The object to be attained by the liquidation of an insolvent

---

[57] *See* First Intervention Ruling Hearing 39:9-23; *Matter of Rehab. of Indem. Ins. Corp., RRG*, 2014 WL 1154057, at *10.

[58] *Matter of Rehab. of Indem. Ins. Corp., RRG*, 2014 WL 1154057, at *10.

[59] The only portions of the Rule 60 Complaint that are not inexcusably delayed are the few allegations relying on evidence from late 2017. Rule 60 Compl. at ¶¶ 31-35. Even so, I find that the prejudice that would flow from Cohen's intervention renders his request untimely. *See infra* at 14-17.

14

insurance company is the orderly and equitable apportionment among creditors of losses that may result and to ensure the equitable distribution of an insolvent debtor's property or assets among creditors."[60] To that end, the Liquidation Order set a January 16, 2015, bar date for the filing of certain proofs of claims ("POCs") against the IIC estate.[61] According to the Receiver's most recent accounting filed in this action (the "Third Accounting"), as of December 31, 2017,[62] the estate received POC forms asserting 2,944 claims, with an aggregate value of $1,084,264,323.[63] Of those POCs, the majority—1,932—are claims by policyholders, with an aggregate value of $578,844,266.[64]

The Receiver continues to evaluate those POCs. In 2017, as detailed in the Third Accounting, the Receiver reviewed and made final determinations as to 1,244

---

[60] 44 C.J.S. Insurance § 245; *accord*, *Cohen Delaware*, 89 A.3d at 81 n.73 ("As Delaware Courts have recognized, one of the main purposes of the Insurers Liquidation Act is to centralize claims in one place 'to avoid dissipating a distressed insurer's assets by allowing it to be sued, and requiring it to defend, litigations scattered in many jurisdictions throughout the country.'" (citation omitted)).

[61] Liq. Order at ¶ 16.

[62] Although the Liquidation Order set a January 16, 2015, bar date, certain POCs may be submitted after that date. Liq. Order at ¶ 16. In addition, the Receiver notes that the number of claims may vary in a given POC. As a result, the total number of claims in the POCs, and the value of those claims, may change as the Receiver continues to evaluate the POCs. D.I. 649 at 13 n.7.

[63] *Id.* at 13-14.

[64] *Id.*

policyholder claims, with an asserted total value of $44,536,632.[65] The Receiver stated that, as of August 31, 2018, 1,718 notices of determination were mailed to POC claimants, representing an aggregate value of $61,097,694.[66] These notices present the Receiver's initial valuation and assignment of claim priority, which the claimant may object to or accept.[67] The Receiver and claimants alike depend on the POC process to assert and resolve claims against IIC's estate.[68] Cohen's intervention would reverse headway in the POC process, years after the bar date, by imposing an evidentiary hearing on the long-closed solvency questions.

Disrupting the progress in a liquidation proceeding creates particular prejudice.[69] Liquidation is meant to distribute an entity's scarce assets among its creditors.[70] The Receiver has already been forced to devote a significant amount of

---

[65] *Id.* at 14.

[66] *Id.* at 14 n.10.

[67] *Id.*; *see also* D.I. 570, Overview at 20.

[68] *See* 18 *Del. C.* § 5917 (describing the process to make claims).

[69] *See Great Am. Leasing Corp.*, 2003 WL 22389464, at *1 ("If the delay is inexcusable, disruption to the schedule is reason enough to deny intervention.").

[70] *See generally*, *Cohen Delaware*, 89 A.3d at 79 n.65 ("The over-all purpose of the Uniform Act, like liquidation proceedings generally, is not only to preserve available assets for the benefit of creditors, but to protect the interest of persons who purchased insurance policies from a company which has become insolvent." (quoting *Matter of Transit Cas. Co.*, 588 N.E.2d 38, 42 (N.Y. 1992))); *In Matter of Liquidation of Freestone Ins. Co.*, 143 A.3d 1234, 1247 (Del. Ch. 2016) ("Another feature of the [] Act enables the chief regulator in the domiciliary jurisdiction to conserve the insolvent insurer's assets and avoid the expenditure of scarce resources on claims that may not receive any distribution, regardless of their strength.").

IIC's limited assets to defending or monitoring various litigations, a number of which involve Cohen or RBE.[71] Imposing an additional evidentiary hearing on settled issues, contested only by Cohen, would force the Receiver to further drain the pool of IIC's assets, ultimately prejudicing the claimants. The intervention would also disrupt the only live adversarial dispute in this proceeding at the moment: intervenor BB&T's request for declaratory relief as to the status of certain assets and how they relate to the IIC estate, which is currently scheduled for a summary judgment hearing and trial in the first half of 2019.[72] For all these reasons, Cohen's requested relief bears a significant risk of prejudicing the Receiver, IIC's estate, the claimants, and intervening party BB&T.

Because the Motion follows years of inexcusable delay and seeks to vacate the long-settled Liquidation Order establishing the rights of IIC and its creditors and policyholders, I conclude the Motion is untimely.[73]

### 2. Cohen Has Not Claimed An Impaired Or Impeded Interest In The Action.

Even if Cohen's request were timely, he has failed to claim a valid interest in this action that has not been foreclosed as grounds to intervene by the Delaware

---

[71] *See* D.I. 649 at 3-12 (discussing Cohen's Criminal Matter and various litigations by or against IIC, the Delaware Department of Insurance, or other related parties); D.I. 582 at 4-15 (same); D.I. 573 at 36-73 (same).

[72] *See* D.I. 512.

[73] Ct. Ch. R. 24(b).

Supreme Court, this Court, or the United States Court of Appeals for the Fourth Circuit. Rule 24(a) requires that a party seeking intervention must claim "an interest relating to the property or transaction which is the subject of the action," and must be "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties," absent a statutory right to intervene.[74] "On a motion to intervene, a party need only claim, rather than prove, an interest in the subject of the litigation."[75] But not all interests are sufficient to justify intervention.[76] For instance, a stockholder with merely derivative interests will generally not satisfy the Rule 24(a) test.[77]

Cohen alleges a handful of interests to justify intervention: (i) an ownership interest that "represents 99% of the ownership of IIC (39.5% [] owned personally,

---

[74] Ct. Ch. R. 24(a).

[75] *Harris v. RHH Partners, LP*, 2009 WL 891810, at *3 (Del. Ch. Apr. 3, 2009).

[76] *See Shipley v. Shipley*, 1991 WL 189000, at *2 (Del. Ch. Sept. 3, 1991) (finding contingent property right to be too speculative under Rule 24).

[77] *See generally*, First Intervention Hearing Ruling at 34:8-38:6; *Haft v. Dart Grp. Corp.*, 1994 WL 705194, at *1 (Del. Ch. Dec. 8, 1994) ("Here the proposed intervenors very plainly do not have a right to intervene in this case under Rule 24(a). The claim that they make is in all events derivative in nature. . . . Perhaps in some situations, analogously to a derivative suit itself, a shareholder could establish that a derivative interest would support intervention under Rule 24(a)[.]").

18

and the other 59.4% [] owned by Cohen's owned entity),"[78] (ii) liberty interests, (iii) property interests, (iv) contractual interests, and (v) reputational interests.[79] All of them purportedly inspire his attempt to intervene and pursue the relief sought in the Rule 60 Complaint. Most of Cohen's interests are alleged in a conclusory fashion, without support or explanation. Cohen focuses on his property and contractual interests, his purported direct equity interest, and, "[m]ost importantly, his liberty interest."[80] Between rulings from the Delaware Supreme Court, this Court, and the United States Court of Appeals for the Fourth Circuit, these interests have already been rejected as a basis for Cohen to intervene.

Cohen's property and contractual interests are rooted in his desire to avoid personal liability that may result from the Receiver's alleged mismanagement of

---

[78] Mot. at ¶ 10. In earlier filings, RBE claimed to be the "owner of 99 percent of the equity of [IIC]." D.I. 357 at 1. But, in the Motion, Cohen stated that he "represents 99% of the ownership of IIC," with "39.6% [being] owned personally, and the other 59.4% [being] owned by Cohen's owned entity." Mot. at ¶ 10. Cohen contends that he purchased 39.6% of IIC stock on September 29, 2017 (the "Stock Purchase"). Reply to Opposition to Motion to Intervene, D.I. 617, at ¶ 1 n.1 (April 30, 2018). Presumably, RBE would hold the remaining 59.4% of IIC following the Stock Purchase.

The parties dispute whether Cohen could have purchased RBE's stock in IIC in light of the Liquidation Order and other applicable law. Sur-Reply in Response to Jeffrey B. Cohen's Motion for Leave to Intervene, D.I. 620, at ¶¶ 2-10; Response to Sur-Reply, D.I. 624 at 3 (July 31, 2018) ("Response to Sur-Reply"). In the context of the First Intervention Ruling, this decision need not resolve that dispute and assumes, without deciding, that Cohen is a stockholder of IIC for purposes of the Motion.

[79] Mot. at ¶ 10.

[80] *Id.* at ¶ 16.

19

IIC.[81]  Cohen does not specify any impending sources of such liability.[82]  Further, the Delaware Supreme Court has already concluded in a similar context that Cohen's personal property interests do not permit him to interfere with these proceedings. Weighing the propriety of discovery into other entities Cohen owns, the Supreme Court ruled that "[a]ny impairment to Cohen's property interests [in his business entities] is decisively outweighed by the important public interest in ensuring that the Commissioner could exercise control over [IIC] and protect the interests that were the subject of the Insurers Liquidation Act."[83]  I conclude that Cohen's claimed property and contractual interests do not entitle him to police IIC's statutory liquidation.

Cohen also seeks to intervene to protect his purported equity interest in IIC.[84] Even assuming that Cohen is an IIC stockholder,[85] this Court held in the First Intervention Ruling that RBE, as a mere IIC stockholder, is not able to intervene as

---

[81]  *Id.* at ¶ 18.

[82]  *See Great Am. Leasing Corp.*, 2003 WL 22389464, at *2 ("[R]emote and indirect interests are insufficient to support [a] motion to intervene as of right pursuant to Rule 24(a).").

[83]  S*ee Cohen Delaware*, 89 A.3d at 93 (in finding that the Court did not violate Cohen's due process rights in this action, stating that "allowing Cohen to continue to interfere by indulging his continued intermingling of the affairs of non-regulated entities with those of a regulated entity would defeat the purposes of the Insurers Liquidation Act").

[84]  Mot. at ¶ 10.

[85]  *See supra* at n.78.

a matter of right in this action on the basis of its equity interest.[86] That holding applies with equal force to Cohen's equity interests, which Cohen claims he obtained through the Stock Purchase.[87] The First Intervention Ruling precludes Cohen from intervening on the basis of his equity interest in IIC.

Finally, as for Cohen's liberty interest, Cohen contends that his freedom from incarceration "hinges on the same questions of law and fact that lie at the heart of this matter," and that the Rule 60 Complaint asserts "parallel" issues to his Criminal Matter.[88] Although Cohen's appeals in his Criminal Matter were pending when he filed the Motion, the United States Court of Appeals for the Fourth Circuit affirmed the District Court on April 25, 2018.[89] Accordingly, his liberty interests as defined by the Criminal Matter are settled and do not justify intervention to contest IIC's insolvency.[90]

---

[86] *See* First Intervention Ruling Hearing at 34:5-35:22.

[87] Response to Sur-Reply at 3; *see also supra* at n.78.

[88] Mot. at ¶ 16.

[89] *See supra* at 3-4.

[90] Cohen also fails to articulate how the Rule 60 Complaint will serve his liberty interests in any collateral attack on his criminal conviction, *i.e.*, in seeking a writ of habeas corpus.

Cohen has not carried his burden to demonstrate how the continued implementation of the Liquidation Order impairs or impedes any of his claimed interests. The Motion fails to satisfy Rule 24(a).[91]

### 3. Cohen Seeks Intervention Only On Foreclosed Solvency Issues, And Does Not Challenge Other Independent Statutory Grounds For The Liquidation Order.

Cohen seeks to intervene to vacate the Liquidation Order, which he asserts is based on incorrect and fraudulent averments regarding IIC's value, insolvency, and business condition.[92] The First Intervention Ruling prohibited RBE from

---

[91] To the extent Cohen seeks intervention under Rule 24(b) on the grounds that the Criminal Matter has "question[s] of law or fact in common" with this proceeding, he fails to carry his burden under Rule 24(b) because he does not identify any common open questions. The federal courts settled all questions of law and fact raised in the Criminal Matter, including Cohen's appeal. Put another way, Cohen has not identified any question of law or fact in common with this action that remains open in the Criminal Matter.

[92] Rule 60 Compl. at ¶¶ 9-38. As the Delaware Supreme Court noted in its opinion affirming the denial of RBE's second motion to intervene, Cohen has been given more than ample opportunity to intervene in this action and contest issues of his fraud. In addressing RBE's "brazen[]" argument that it had not been "permitted an opportunity to challenge those [fraud] allegations," the Delaware Supreme Court noted:

> If RB Entertainment or Cohen had truly never been given an opportunity to challenge the fraud allegations, then that argument might have been advanced without a lack of grace. But, as the record reflects, the Court of Chancery asked whether RB Entertainment wanted to contest the fraud issue at the hearing on August 22, 2013 on RB Entertainment's original motion to intervene. At no time in the months that followed did RB Entertainment do so. RB Entertainment's proposed pleading, filed on August 21, 2013 in opposition to the Liquidation Petition, failed to respond to the allegations of fraud in the Commissioner's petition, stating that it should be addressed "separately." For his part, Cohen has not denied the fraud either. As a result, the record before the Court of Chancery consisted solely of strong evidence

22

intervening on the issues of IIC's valuation, solvency, and business viability. It prohibits Cohen from intervening on those issues now. The First Intervention Ruling left open the possibility that RBE could intervene on issues directly related to Cohen's fraud on IIC. But that is not the theory Cohen has chosen to pursue: the Rule 60 Complaint does not challenge the specifics of Cohen's fraud. Because Cohen now seeks to intervene solely on issues of IIC's valuation, solvency, and business liability, like RBE before him, the First Intervention Ruling compels me to deny his Motion.

The Third Intervention Ruling also forecloses Cohen from intervening. The Court denied RBE's third motion to intervene because it did not attack the various independent statutory grounds for liquidation under Delaware's Insurers Liquidation Act, rendering RBE's intervention "futile."[93] Cohen's Motion suffers from the same fatal flaw. Cohen fails to mention, much less attack, several independent grounds for liquidation permitted under Delaware's Insurers Liquidation Act.[94] The Rule 60

of fraud material to Indemnity's solvency—evidence that those in the strongest position to refute chose not to dispute.

*Cohen Delaware*, 89 A.3d at 95-96. Neither Cohen nor RBE have attempted to address Cohen's fraud in this action.

[93] *Matter of Rehab. of Indem. Ins. Corp., RRG*, 2014 WL 1154057, at *10.

[94] *See id.* at *9; 18 *Del. C.* §§ 5905-06. Cohen states in his briefing on the Motion that IIC's Receiver has not "addressed the proof showing . . . [t]he consent of the board was unlawful." Response to Sur-Reply at ¶ 2(d). That allegation does not appear to be in the Rule 60 Complaint, but rather was presented in Cohen's Response to the Receiver's Sur-

Complaint only challenges issues related to IIC's solvency, valuation, and business viability. But the Renewed Liquidation Petition that led to the Liquidation Order was based on a host of independent statutory grounds, only one of which stated that IIC was impaired and insolvent under 18 *Del. C.* §§ 5905(1) and 5906.[95] Each of these grounds, including the Board's consent to liquidation, Cohen's alleged refusal to relinquish materials to the Commissioner for examination, and the danger presented to policyholders by Cohen's alleged frauds, was incorporated into the Liquidation Order[96] and formed an independent statutory basis for IIC's liquidation.[97]

Cohen's Rule 60 Complaint, like RBE's third motion to intervene, is "unable or unwilling to raise any litigable dispute," and "permitting intervention would be futile."[98] In other words, even if Cohen were to succeed on his solvency and fraud arguments, he fails to attack the other independent statutory grounds for the

---

Reply without citation or cross-reference. Even reading Cohen's *pro se* submissions leniently, I decline to analyze this buried allegation as a basis for intervention.

[95] *See supra* at 7-8.

[96] Liq. Order at 3 (finding that "the Commissioner has provided the Court with . . . evidence that supports the grounds for liquidation under 18 *Del. C.* §§ 5905 and 5906," and "that sufficient grounds for the issuance of [the Order] exist pursuant to" those statutes).

[97] *See Matter of Rehab. of Indem. Ins. Corp., RRG*, 2014 WL 1154057, at *9-10.

[98] *Id.* at *10; *see also United Rentals, Inc.*, 2007 WL 4327770, at *1 ("Necessarily, however, under either variety of intervention the applicant must, as a threshold matter, present a potentially valid claim.").

Liquidation Order. The Order would still stand regardless of Cohen's Rule 60 Complaint. The Motion is denied.

### B. As A Non-Party, Cohen Is Not Entitled To File For Relief Under Rule 60(b).

Cohen's Motion seeks intervention to file the Rule 60 Complaint. To the extent Cohen seeks to pursue his claims under Rule 60 as a non-party, that relief is unavailable because Cohen is not able to intervene. Rule 60(b) "is confined to motions by 'a party or his legal representative'" and is unavailable to non-parties like Cohen.[99]

## III. CONCLUSION

For the foregoing reasons, Cohen's Motion to Intervene is denied.

**IT IS SO ORDERED**.

---

[99] *Braasch v. Mandel*, 172 A.2d 271, 274 (Del. 1961); *see also In re U.S. Robotics Corp.*, 1999 WL 160154, at *10 (same); D.I. 564.